UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

---

JOEL MARCEL CARTER,

        Plaintiff,                  Case No. 1:14-cv-923

v.                                        Honorable Gordon J. Quist

DANIEL HEYNS et al.,

        Defendants.
_____/

## **OPINION**

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendants Heyns and Dawdy. The Court will serve the complaint against Defendants Vette, Moran, McKee, Stoddard, Norwood, Gilkey and Buchin.

**Discussion**

    I.        Factual allegations

Plaintiff Joel Marcel Carter presently is incarcerated with the Michigan Department of Corrections (MDOC) at the Marquette Branch Prison, though the actions about which he complains occurred while he was housed at the Ionia Correctional Facility (ICF) and the Bellamy Creek Correctional Facility (IBC). He sues the following MDOC employees: Director Daniel Heyns; Director of Mental Health David Dawdy; and Mental Health Rights Specialist Bill Vette. He also sues IBC Warden Kenneth McKee; ICF Warden Cathleen Stoddard; ICF Mental Health Unit Chief Michael Moran; ICF Resident Unit Manager Harold Gilkey; and ICF Deputy Warden Nanette Norwood.

According to the complaint, Plaintiff suffers from multiple sclerosis (MS), a condition that results in multiple and varied neurologic symptoms. Plaintiff alleges that, as a result of his MS, he has developed a variety of mental impairments, including a psychosis disorder, an obsessive-compulsive disorder and an unspecified other mental disorder arising out of a medical condition. His documented symptoms include paranoia, hallucinations, mania, delusions and depression. Plaintiff alleges that the MDOC has failed to provide treatment for his mental disorders. He contends that, since 2005, MDOC officials have reported approximately 200 occasions on which Plaintiff has exposed himself to MDOC staff members, all of which allegedly arise out of his compulsions. Plaintiff complains that Defendants continuously impose penalties in the form of loss of privileges (LOP), under which Plaintiff loses all of his therapeutic programming, exercise, and meaningful recreation. Plaintiff spends 24 hours per day in his cell, except for when he is showering or attending medical and mental-health appointments.

Under MDOC rules, after a prisoner spends four weeks in 24-hour lockdown, he receives a "seven-day break," during which he is allowed to attend one hour of yard per day for seven days, before being returned to complete cell-restriction.  Plaintiff argues that the conditions of his cell restriction amount to segregation, because he receives no environmental stimulation, no access to sunlight and fresh air, and no exercise or space to move freely.  Plaintiff contends that he is being punished for his compulsive disorder, and the sanctions are worsening his MS and his psychological conditions, causing him pain, muscle atrophy, cramps, muscle spasms, weakness and loss of balance.  He also asserts that the deprivations aggravate his hypertension, obesity and arrhythmia, as well as his mental health symptoms of hallucinations, delusions, paranoia, impulse control, depression, and suicidal ideation.  Plaintiff contends that the MDOC has a custom or practice of punishing mentally ill prisoners for symptoms of their mental illnesses, despite the prohibition on such punishment set forth in MICH. DEP'T OF CORR., Policy Directive 03.03.105 ¶¶ DDD - JJJ.

In July of 2013, MDOC Director of Mental Health Services Dr. Kathleen Mutschler recommended that Defendants Warden Stoddard and Mental Health Unit Chief Moran waive Plaintiff's LOP sanctions because of his mental health issues.  Both refused to do so.  On July 29, 2013, Plaintiff spoke to Defendant Counselor Buchin, who informed him that he would be printing off a memo waiving Plaintiff's sanctions.  Thereafter, Plaintiff repeatedly asked Defendant Buchin for a copy of the memo, but Buchin continuously claimed that the printer was broken.  Buchin also repeatedly told Plaintiff that he believed Plaintiff should be on LOP and that he did not care how long Plaintiff went without a break.  Between June 17, 2013 and August 27, 2013, a period of 71 days, Plaintiff continuously was kept in his cell without exercise, in violation of Policy Directive 03.03.105 ¶ QQQ.

On August 23, 2013, during a grievance interview with Defendant Gilkey, Plaintiff complained that he had not received a break from sanctions for more than two months. Defendants Gilkey and Norwood both upheld Buchin's denial of a seven-day-break. At the grievance interview, Gilkey told Plaintiff that Stoddard was aware of Mutschler's recommendation, but that the officers did not like it. On August 29, 2013, Plaintiff spoke with Defendant Moran during another grievance interview. Moran denied that Dr. Mutschler had recommended that Plaintiff's sanctions be removed, despite the fact that Moran had sent a memorandum to ICF's hearing office in July 2013, informing them of the recommendation. Plaintiff alleges that Defendants Stoddard, Norwood, Moran, Gilkey and Buchin interfered with Dr. Mutschler's medical treatment recommendation.

Plaintiff transferred to IBC in September 2013. At the time of his transfer, Plaintiff spoke with Defendant Warden McKee about his loss-of-privileges sanctions. Plaintiff told McKee that Dr. Mutschler had made a recommendation to waive Plaintiff's sanctions while he was housed at ICF, but that officials had refused to honor the request. McKee responded that if Dr. Mutschler had made such a recommendation, his sanctions should have been lifted. McKee promised to call Warden Stoddard, who was his former Deputy Warden. According to Plaintiff, nothing was done, and he was deprived of nine months of daily recreation during his time at IBC, resulting in the exacerbation of his physical and mental disabilities.

On October 31, 2014, Defendant Vette visited Plaintiff at Dr. Mutschler's request to investigate why Plaintiff's sanctions had not been waived. Vette told Plaintiff that Dr. Mutschler wanted him removed from LOP, but that Ionia officials were not budging. Plaintiff asked Vette to notify Defendants Heyns and McKee about Dr. Mutschler's recommendation. In addition, on April 17, 2014, Plaintiff sent a letter to Defendants Heyns and Dawdy about his complaints. He also sent

them two petitions seeking relief from his sanctions on May 22, 2014 and July 24, 2014. He contends that he continues to be given LOP sanctions.

Plaintiff argues that Defendants acted in violation of the Eighth Amendment and the Americans with Disabilities Act by keeping him in his cell for more than 70 days without any exercise and by punishing him for his mental-health condition. For relief, he seeks compensatory and punitive damages and injunctive relief.

II. Failure to state a claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility

standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

Plaintiff fails to make specific factual allegations against Defendants Heyns and Dawdy, other than his claim that they failed to conduct an investigation or correct his LOP sanctions in response to his grievances and petitions. Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575-76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676.

Plaintiff has failed to allege that Defendants Heyns and Dawdy engaged in any active unconstitutional behavior. Accordingly, he fails to state a claim against them.

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Defendants Heyns and Dawdy will be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will serve the complaint against Defendants Vette, Moran, McKee, Stoddard, Norwood, Gilkey and Buchin.

An Order consistent with this Opinion will be entered.


Dated:  November 6, 2014                      /s/ Gordon J. Quist
                                            GORDON J. QUIST
                                        UNITED STATES DISTRICT JUDGE