UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOEL MARCEL CARTER,

        Plaintiff,

v.

DANIEL HEYNS, *et al.*,

        Defendants.
_____/

Case No. 1:14-cv-923

Hon. Gordon J. Quist

**REPORT AND RECOMMENDATION**

This is a *pro se* civil rights action brought by a state prisoner at a Michigan Department of Corrections (MDOC) facility. This matter is now before the Court on a motion for summary judgment filed by defendants Buchin, McKee, Moran, Norwood, Stoddard, and Vette (docket no. 25), plaintiff's "Motion to stay defendants' motion for summary judgment until after discovery" (docket no. 46), and a motion for summary judgment filed by defendant Gilkey (docket no. 50).

    **I.**    **Plaintiff's complaint**

The Court previously summarized the allegations in plaintiff's complaint as follows.

Plaintiff Joel Marcel Carter presently is incarcerated with the Michigan Department of Corrections (MDOC) at the Marquette Branch Prison, though the actions about which he complains occurred while he was housed at the Ionia Correctional Facility (ICF) and the Bellamy Creek Correctional Facility (IBC). He sues the following MDOC employees: Director Daniel Heyns; Director of Mental Health David Dawdy; and Mental Health Rights Specialist Bill Vette. He also sues IBC Warden Kenneth McKee; ICF Warden Cathleen Stoddard; ICF Mental Health Unit Chief Michael Moran; ICF Resident Unit Manager Harold Gilkey; and ICF Deputy Warden Nanette Norwood.

According to the complaint, Plaintiff suffers from multiple sclerosis (MS), a condition that results in multiple and varied neurologic symptoms. Plaintiff alleges that, as a result of his MS, he has developed a variety of mental impairments, including a psychosis disorder, an obsessive-compulsive disorder and an unspecified other mental disorder arising out of a medical condition. His documented symptoms include paranoia, hallucinations, mania, delusions and depression. Plaintiff alleges that the MDOC has failed to provide treatment for his mental disorders. He contends that, since 2005, MDOC officials have reported approximately 200 occasions on which Plaintiff has exposed himself to MDOC staff members, all of which allegedly arise out of his compulsions. Plaintiff complains that Defendants continuously impose penalties in the form of loss of privileges (LOP), under which Plaintiff loses all of his therapeutic programming, exercise, and meaningful recreation. Plaintiff spends 24 hours per day in his cell, except for when he is showering or attending medical and mental-health appointments.

Under MDOC rules, after a prisoner spends four weeks in 24-hour lockdown, he receives a "seven-day break," during which he is allowed to attend one hour of yard per day for seven days, before being returned to complete cell-restriction. Plaintiff argues that the conditions of his cell restriction amount to segregation, because he receives no environmental stimulation, no access to sunlight and fresh air, and no exercise or space to move freely. Plaintiff contends that he is being punished for his compulsive disorder, and the sanctions are worsening his MS and his psychological conditions, causing him pain, muscle atrophy, cramps, muscle spasms, weakness and loss of balance. He also asserts that the deprivations aggravate his hypertension, obesity and arrhythmia, as well as his mental health symptoms of hallucinations, delusions, paranoia, impulse control, depression, and suicidal ideation. Plaintiff contends that the MDOC has a custom or practice of punishing mentally ill prisoners for symptoms of their mental illnesses, despite the prohibition on such punishment set forth in MICH. DEP'T OF CORR., Policy Directive 03.03.105 ¶¶ DDD - JJJ.

In July of 2013, MDOC Director of Mental Health Services Dr. Kathleen Mutschler recommended that Defendants Warden Stoddard and Mental Health Unit Chief Moran waive Plaintiff's LOP sanctions because of his mental health issues. Both refused to do so. On July 29, 2013, Plaintiff spoke to Defendant Counselor Buchin, who informed him that he would be printing off a memo waiving Plaintiff's sanctions. Thereafter, Plaintiff repeatedly asked Defendant Buchin for a copy of the memo, but Buchin continuously claimed that the printer was broken. Buchin also repeatedly told Plaintiff that he believed Plaintiff should be on LOP and that he did not care how long Plaintiff went without a break. Between June 17, 2013 and August 27, 2013, a period of 71 days, Plaintiff continuously was kept in his cell without exercise, in violation of Policy Directive 03.03.105 ¶ QQQ.

> On August 23, 2013, during a grievance interview with Defendant Gilkey, Plaintiff complained that he had not received a break from sanctions for more than two months. Defendants Gilkey and Norwood both upheld Buchin's denial of a seven-day break. At the grievance interview, Gilkey told Plaintiff that Stoddard was aware of Mutschler's recommendation, but that the officers did not like it. On August 29, 2013, Plaintiff spoke with Defendant Moran during another grievance interview. Moran denied that Dr. Mutschler had recommended that Plaintiff's sanctions be removed, despite the fact that Moran had sent a memorandum to ICF's hearing office in July 2013, informing them of the recommendation. Plaintiff alleges that Defendants Stoddard, Norwood, Moran, Gilkey and Buchin interfered with Dr. Mutschler's medical treatment recommendation.
>
> Plaintiff transferred to IBC in September 2013. At the time of his transfer, Plaintiff spoke with Defendant Warden McKee about his loss-of-privileges sanctions. Plaintiff told McKee that Dr. Mutschler had made a recommendation to waive Plaintiff's sanctions while he was housed at ICF, but that officials had refused to honor the request. McKee responded that if Dr. Mutschler had made such a recommendation, his sanctions should have been lifted. McKee promised to call Warden Stoddard, who was his former Deputy Warden. According to Plaintiff, nothing was done, and he was deprived of nine months of daily recreation during his time at IBC, resulting in the exacerbation of his physical and mental disabilities.
>
> On October 31, 2014, Defendant Vette visited Plaintiff at Dr. Mutschler's request to investigate why Plaintiff's sanctions had not been waived. Vette told Plaintiff that Dr. Mutschler wanted him removed from LOP, but that Ionia officials were not budging. Plaintiff asked Vette to notify Defendants Heyns and McKee about Dr. Mutschler's recommendation. In addition, on April 17, 2014, Plaintiff sent a letter to Defendants Heyns and Dawdy about his complaints. He also sent them two petitions seeking relief from his sanctions on May 22, 2014 and July 24, 2014. He contends that he continues to be given LOP sanctions.

Opinion (docket no. 5, Page ID.75-78).

The gist of plaintiff's claim is that defendants acted in violation of the Eighth Amendment and the Americans with Disabilities Act, 42 U.S.C. § 12132 *et seq.* ("ADA") by keeping him in his cell for more than 70 days without any exercise and by punishing him for his mental health condition. Plaintiff's complaint alleged three counts. In Count I, plaintiff alleged that defendants subjected him to cruel and unusual punishment in violation of the Eighth Amendment

3

when they refused to provide him with prescribed treatment and denied him daily exercise and meaningful recreation. In Count II, plaintiff alleged that defendants subjected him to cruel and unusual punishment in violation of the Eighth Amendment when they failed to provide him with exercise for 71 days. In Count III, plaintiff alleged that defendants denied him with services, programs and activities, and discriminated against him in violation of the Americans with Disabilities Act, 42 U.S.C. § 12132 *et seq.* ("ADA"). For relief, plaintiff seeks compensatory and punitive damages and injunctive relief. On initial screening, the Court dismissed defendants Heyns and Dawdy because plaintiff failed to allege that they engaged in any unconstitutional behavior. Opinion at PageID.79-80.

## II. Defendant Buchin, McKee, Moran, Norwood, Stoddard, and Vette's motion for summary judgment

### A. Legal standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Rule 56 further provides that a party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

In *Copeland v. Machulis*, 57 F.3d 476 (6th Cir. 1995), the court set forth the parties' burden of proof in a motion for summary judgment:

> The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case. Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment. The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

*Copeland*, 57 F.3d at 478-79 (citations omitted). "In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party." *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).

### B. Defendants' grounds for summary judgment

Here, defendants address both of plaintiff's Eighth Amendment claims (Counts I and II) stating in conclusory fashion that "[t]he medical records attached to Defendant Moran [sic] demonstrate that Plaintiff has received a considerable amount of treatment" and "there is insufficient evidence that Defendants were aware that Plaintiff's LOP [loss of privileges] sanction – imposed due to his misconducts – caused a substantial risk of serious harm to his mental health." Defendants' Brief (docket no. 26, PageID.116-120). In their affidavits, defendant Moran denies knowledge of Dr. Mutschler's request to waive the LOP, defendant Stoddard disputes whether the doctor made such a request, and defendant Vette denies plaintiff's allegation that Dr. Mutschler directed him to investigate why plaintiff was on LOP. *See* Moran Aff. (docket no. 26-2, PageID.126) ("I don't have any recollection of a request by Dr. Mutschler to waive Inmate Carter's LOP"); Stoddard Aff. (docket no. 26-4, PageID.124) ("there is no documentation on file that indicates this recommendation was made by Dr. Kathleen Mutschler"); Vette Aff. (docket no. 32-1, PageID.216) ("William Vette

denies he was directed by Director Mutschler to investigate why Carter was on LOP (Loss of privileges)") (emphasis omitted). While defendants' brief sets forth the legal standard for an Eighth Amendment claim, it does not address the claim raised by plaintiff, i.e., that defendants were deliberately indifferent to his serious medical needs when they ignored Dr. Mutschler's recommendation to waive plaintiff's LOP sanctions because of his mental condition.

Defendants seek summary judgment on plaintiff's ADA claim on legal grounds because "[p]laintiff failed to establish that he was discriminated against *solely* because of his disability." Defendants' Brief at PageID.120 (emphasis in original). Some months after defendants filed their brief, the Sixth Circuit rejected this sole-causation requirement. *See Anderson v. City of Blue Ash*, 798 F.3d 338, 357, fn. 1 (6th Cir. 2015) ("Our test for intentional discrimination under Title II of the ADA previously required that the discrimination be 'solely' because of the plaintiff's disability [citations omitted], but our decision in *Lewis v. Humboldt Acquisition Corp.*, 681 F.3d 312, 317 (6th Cir.2012) (en banc), rejected this sole-causation requirement"). Accordingly, it appears that defendants seek summary judgment of plaintiff's ADA claim under an incorrect legal standard.[1]

---

[1] Defendants also seek summary judgment on the ground of qualified immunity. After a lengthy recitation of the legal standard applicable to a qualified immunity claim, defendants provided a three-sentence argument which did not address the qualified immunity issue in any meaningful manner. *See* Defendants' Brief at PageID.123 ("Plaintiff has not supported his allegations with sufficient evidence. Even when the facts are viewed in a light most favorable to Plaintiff, the actions or inactions of Defendants were not objectively unreasonable. In sum, summary judgment should be granted in Defendants' favor because they are entitled to qualified immunity."). The Court deems this issue waived for lack of adequate briefing. *See McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in a most skeletal way, leaving the court to . . . put flesh on its bones.").

### C. Plaintiff's motion to stay defendant Buchin, McKee, Moran, Norwood, Stoddard, and Vette's motion for summary judgment to conduct discovery

Plaintiff seeks to stay this motion for summary judgment pursuant to Fed. R. Civ. P. 56(d) until he can conduct discovery. Plaintiff's motion is unopposed. Fed. R. Civ. P. 56(d) provides that "[i]f a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order." Fed. R. Civ. P. 56(d). The trial court's allowance of additional discovery under Fed. R. Civ. P. 56(d) (formerly Rule 56(f)) is discretionary. *Egerer v. Woodland Realty, Inc.*, 556 F.3d 415, 416 (6th Cir. 2009). "The affidavit required by [former] Rule 56(f) to support a request for additional discovery must indicate the need for discovery, what material facts may be uncovered, and why the information has not been previously discovered." *Id.* The Sixth Circuit has cautioned that in the typical case, when the parties have no opportunity for discovery, denying a motion under Rule 56(d) and ruling on a summary judgment motion is likely to be an abuse of discretion. *Siggers v. Campbell*, 652 F.3d 681, 695-96 (6th Cir. 2011). However, "[i]t is not an abuse of discretion for the district court to deny the discovery request when the party makes only general and conclusory statements [in its affidavit] regarding the need for more discovery and does not show how an extension of time would have allowed information related to the truth or falsity of the [document] to be discovered." *Ball v. Union Carbide Corp.*, 385 F.3d 713, 720 (6th Cir. 2004).

In his supporting brief, plaintiff gives a succinct statement of his claim in this lawsuit:

> On September 2, 2014, Plaintiff Joel Carter proceeding pro se, filed a civil rights complaint under 42 U.S.C. § 1983 seeking monetary damages based on

> deliberate indifference under the Eighth Amendment of the United States Constitution regarding Defendants [sic] failure to provide prescribed treatment and failure to provide an exercise break for 71 days.

Plaintiff's Brief (docket no. 47, PageID.235). In a supporting affidavit, plaintiff explained:

> 5. I claim that in July 2013, Dr. Mutschler instructed defendants to waive my sanction of Loss of Privileges so that I can engage in daily exercise and recreation based on my mental health needs, and that Defendants disregarded the recommendation.
>
> 6. I also claim that Defendants deprived me of a "seven-day sanction break" after I served 31 days of Loss of Privileges for seventy-one days in June through August 2013.

Carter Aff. (docket no. 47-1, PageID.244).

Then, in his declaration pursuant to Fed. R. Civ. P. 56(d), plaintiff stated that he needs the following information to respond and rebut defendants' motion:

> 7. I need the Court to help me facilitate and/or grant my Motion for Deposition of Dr. Kathleen Mutschler. Dr. Mutschler [sic] testimony will rebut Defendants [sic] contention that Dr. Mutschler did not instruct or recommend them to waive my sanction of LOP for mental health purposes.
>
> 8. I also seek to obtain the Memorandum created by Dr. Mutschler and Defendant Moran in Plaintiff's July 2013 Threatening Behavior Hearing Packet, Record file, and electronic Record file that Defendant continue to conceal from Plaintiff.
>
> 9. I need to obtain "Offender Management Network Information" that notes my Loss of Privilege sanctions and sanction breaks, so that I can prove that I was deprived of exercise for seventy one days. Defendant Buchin refers to this information but fails to provide it to the Court because it is damaging and favorable to me.
>
> 10. Discovery limited to the Memorandum of Dr. Mutschler and Defendant Moran in Plaintiff's Threatening Behavior Hearing Packet from July 2013; Plaintiff's Record File and Electronic Record File from July 2013; Plaintiff's Offender Management Network Information from June 1, 2013 through August 31, 2015; and the

> Deposition by Written Questions and Subpoena to Dr. Mutschler, is essential to the prosecution of this case in order to show the Court Defendants [sic] unlawful conduct and misrepresentations Defendant [sic] made in their motion for summary judgment.

*Id.* at PageID.244-245.

Based on this record, plaintiff has demonstrated that he cannot present facts essential to justify his opposition at this time under Fed. R. Civ. P. 56(d). Specifically, plaintiff points out that absent the requested discovery, he cannot establish the duration of his LOP or Dr. Mutschler's recommendations issued with respect to the LOP. This evidence is relevant because defendants have stated either that they have no recollection of Dr. Mutschler's recommendations or that no record of the recommendations exist. Accordingly, plaintiff's motion to stay should be granted.

### D. Conclusion

For these reasons, plaintiff's motion to stay (docket no. 46) should be granted and he should be allowed to engage in limited discovery to obtain the information set forth in ¶ 10 of his affidavit. Carter Aff. at PageID.244-245. Given the extent of this discovery and the deficiencies in defendants' motion for summary judgment referenced in § II.B., *supra*, defendants' motion for summary judgment (docket no. 25) should be denied without prejudice. Defendants may re-file their motion at the conclusion of this limited discovery.

### III. Defendant Gilkey

Plaintiff did not file a response or a motion to stay defendant Gilkey's motion for summary judgment. "The fact that there has been no response to a summary judgment motion does not, of course, mean that the motion is to be granted automatically." *Champion v. Artuz*, 76 F.3d 483, 486 (2d Cir. 1996). The trial court is required to "intelligently and carefully review the

legitimacy of such unresponded-to motion" and cannot "blithely accept the conclusions argued in the motion." *Guarino v. Brookfield Township Trustees*, 980 F.2d 399, 407 (6th Cir. 1992). However, when a motion for summary judgment is unopposed, "[n]othing in either the Rules or case law supports an argument that the trial court must conduct its own probing investigation of the record" to demonstrate the existence of genuine issues of material fact. *Id.* at 405.

Plaintiff's claim against defendant Gilkey arose from plaintiff's grievance interview with Gilkey. *See* Compl. (docket no. 1, PageID.15). A prison official whose only role involved the denial of an administrative grievance cannot be liable under § 1983. *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "The mere denial of a prisoner's grievance states no claim of constitutional dimension." *Alder v. Correctional Medical Services*, 73 Fed. Appx. 839, 841 (6th Cir. 2003). *See Martin v. Harvey*, 14 Fed. Appx. 307, 309 (6th Cir. 2001) (observing that the denial of an appeal of a grievance complaining of inadequate medical care is not the same as the actual denial of a request to receive medical care). Accordingly, defendant Gilkey's motion for summary judgment (docket no. 50) should be granted.

### IV. Recommendation

For the reasons set forth above, I respectfully recommend that plaintiff's motion to stay (docket no. 46) be **GRANTED** and that plaintiff be allowed **90 days** to engage in the discovery as outlined in ¶ 10 of his affidavit at PageID.245.

I further recommend that defendant Buchin, McKee, Moran, Norwood, Stoddard, and Vette's motion for summary judgment (docket no. 25) be **DENIED** without prejudice.

I further recommend that defendant Gilkey's motion for summary judgment (docket no. 50) be **GRANTED**.

Dated:  January 28, 2016                /s/ Ray Kent
                                        RAY KENT
                                        United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report.  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order.  *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).